**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

SLATE HILL DAYCARE CENTER INC.,
on behalf of itself and all others similarly
situated,

                    Plaintiff,

       v.

REPUBLIC-FRANKLIN INSURANCE
COMPANY,

                    Defendant.

No. 7:20-cv-03565-PMH

**DEFENDANT'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

I.   THE OPPOSITION CONCEDES THAT THE VIRUS EXCLUSION IS CASE DISPOSITIVE ................................................................................................................ 2

II.  THE OPPOSITION CONCEDES THAT LOSS OF INCOME AND EXTRA EXPENSE CAUSED BY SOCIAL-DISTANCING ORDERS ARE NOT LOSSES "CAUSED BY" DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY ......... 5

III. THE OPPOSITION DOES NOT ADDRESS THE COMPLAINT'S FAILURE TO SATISFY THE REQUIREMENTS FOR CIVIL AUTHORITY COVERAGE ................ 8

CONCLUSION ............................................................................................................................ 10

# **TABLE OF AUTHORITIES**

## **CASES**

*10E, LLC v. Travelers Indem. Co. of Conn.*,
   No. 2:20-cv-04418-SVW-AS (C.D. Cal. Aug. 28, 2020) ............................................................ 6

*54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*,
   306 A.D.2d 67 (1st Dept. 2003) ................................................................................................ 10

*Borah, Goldstein, Atschuler, Nahins & Goidel, P.C. v. Trumbull Insurance Co.*,
   2016 N.Y. Slip Op. 32736 (U) (N.Y. Cty. Apr. 5, 2016) .......................................................... 10

*Diesel Barbershop, LLC v. State Farm Lloyds*,
   No. 5:20-CV-461-DAE, 2020 WL 4724305 (W.D. Tex. Aug. 13, 2020) ............................ 3, 6

*Emps. Ins. of Wausau v. Duplan Corp.*,
   No. 94-cv-3143-CSH, 1999 WL 777976 (S.D.N.Y. Sept. 30, 1999) ........................................ 4

*Facet Indus., Inc. v. Wright*,
   95 A.D.2d 262 (1st Dept. 1983) ................................................................................................ 10

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
   No. 20-258-CB-C30 (Ingham Cty., Mich. Cir. Ct. Jul. 1, 2020) .......................................... 3, 6

*Hughes v. Potomac Ins. Co. of D.C.*,
   199 Cal. App. 2d 239 (Ct. App. 1962) ........................................................................................ 8

*K.D. ex rel. Duncan v. White Plains Sch. Dist.*,
   921 F. Supp. 2d 197 n.8 (S.D.N.Y. 2013) .................................................................................. 5

*Malaube, LLC v. Greenwich Ins. Co.*,
   No. 1:20-cv-22615-KMW (S.D. Fl. Aug. 26, 2020) .................................................................. 6

*Mama Jo's Inc. v. Sparta Ins. Co.*,
   No. 18-cv-12887, 2020 WL 4782369 (11th Cir. Aug. 18, 2020) ......................................... 7, 8

*Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*,
   No. CIV.A.01-4679, 2002 WL 31247972 (E.D. Pa. Sept. 30, 2002) ....................................... 9

*Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*,
   17 F. Supp. 3d 323 (S.D.N.Y. 2014) .......................................................................................... 7

*Nicholas J. Masterpol, Inc. v. Travelers Ins. Cos.*,
   273 A.D.2d 817 (4th Dept. 2000) ............................................................................................... 3

*Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*,
   No. 06 Civ. 22535, 2007 WL 9703576 (S.D. Fla. Oct. 19, 2007) ............................................ 3

*Rose's 1, LLC v. Erie Ins. Exch.*,
   No. 2020 CA 002424 B, 2020 WL 458206 (D.C. Super. Aug. 6, 2020) .............................. 6, 7

*Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*,
   302 A.D.2d 1 (1st Dept. 2002) ................................................................................................ 7

*Sher v. Allstate Ins. Co.*,
   947 F. Supp. 2d 370 (S.D.N.Y. 2013) ..................................................................................... 4

*Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*,
   No. 20-Civ-3311 (VEC) (S.D.N.Y. May 14, 2020) ................................................................ 5

*Studio 417, Inc. v. Cincinnati Ins. Co.*,
   No. 20-CV-03127-SRB, 2020 WL 4692385 (W.D. Mo. Aug. 12, 2020) ................................ 8

*Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
   89 N.Y.2d 308 (1996) ............................................................................................................. 3

*Tozzi v. Long Island R. Co.*,
   651 N.Y.S.2d 270 (N.Y. Sup. Ct. 1996) ................................................................................. 4

*W. Fire Ins. Co. v. First Presbyterian Church*,
   437 P.2d 52 (Colo. 1968) ........................................................................................................ 8

## **FEDERAL RULES**

Federal Rule of Civil Procedure 12(b)(6) ........................................................................................ 1

Republic-Franklin respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

The Opposition leaves no question that Plaintiff's loss is excluded under the Policy's Virus Exclusion. It acknowledges repeatedly that, in this action, Plaintiff is seeking coverage for loss of income and extra expense "as a result of the coronavirus." Opp. Br. at 7, 10, 11, 12, 20. Any such loss is unambiguously excluded.

Nor does the Opposition address the Complaint's failure to plead "direct physical loss of or damage to" Plaintiff's daycare centers, a threshold requirement for Business Income or Extra Expense coverage. While the Complaint's central contention is that Plaintiff's business income loss and extra expense were caused by social-distancing orders issued in response to COVID-19, Plaintiff now appears to concede that such orders cannot constitute "direct physical loss of or damage to property" and therefore those losses are not covered. Instead, Plaintiff pivots to the contention that its loss was caused by COVID-19 virus cells that physically contaminated its premises. That is not alleged in the Complaint, any loss attributable to the presence of virus cells on Plaintiff's premises would undisputedly fall under the Policy's Virus Exclusion and, in any event, the presence of virus cells on property still would not constitute "direct physical loss of or damage to property" under New York law sufficient to trigger property insurance coverage.

Finally, the Opposition fails to support any cognizable Civil Authority claim. Again, it concedes that its Civil Authority claim is predicated on losses caused by orders issued in response to the COVID-19 virus, an excluded peril under the Virus Exclusion. Opp. Br. at 11. Moreover, the orders, on their face, were issued to slow the spread of the virus, and were not "actions of civil

---

[1] Capitalized terms not defined herein have the meaning defined in the Moving Brief.

authority" taken "due to direct physical loss of or damage to *property*" near Plaintiff's daycare centers. Finally, Plaintiff cannot escape the fact that their daycare centers undisputedly remained open and operational, undermining any claim that "access" was "prohibit[ed]."

## I. THE OPPOSITION CONCEDES THAT THE VIRUS EXCLUSION IS CASE DISPOSITIVE

In attempting to satisfy the "direct physical loss of or damage to property" requirement, a threshold requirement for any claim of Business Income, Extra Expense and Civil Authority coverage, the Opposition abandons the distinction the Complaint tried to draw between social-distancing orders implemented in response to COVID-19 and COVID-19 itself. *See* Compl. ¶ 17. The Opposition now states unequivocally and repeatedly that Plaintiff seeks Business Income, Extra Expense and Civil Authority coverage for loss "caused by or resulting from" COVID-19:

- "[C]overage is sought for physical loss or damage caused by the actual presence of the coronavirus[.]" Opp. Br. at 7.

- "The presence of the coronavirus in Plaintiff's property and surrounding properties therefore constitutes direct physical loss or damage." Opp. Br. at 9.

- "Plaintiff's property and surrounding property was contaminated by the coronavirus, which forced Plaintiff to shut down its business, causing business income loss." Opp. Br. at 10.

- "Plaintiff was specifically required to suspend operations due to ongoing physical loss and damage from the coronavirus in the area of Plaintiff's business[.]" Opp. Br. at 12.

- "Plaintiff intends to support its allegations through evidence that its insured property and the surrounding area has experienced physical loss and property damage as a result of the coronavirus and COVID-19." Opp. Br. at 20.

Plaintiff's claim fails as a matter of law under the Virus Exclusion, which expressly applies to the Business Income, Extra Expense and Civil Authority sections of the Policy and excludes coverage for any loss "caused by or resulting from" a virus.[2] Every court to have construed the

---

[2] The Opposition argues in passing that Plaintiff's loss was "also caused by civil authority orders, *not solely* by the coronavirus" and there are no exclusions for civil authority orders "issued in

2

virus exclusion in the context of COVID-19 business income and/or extra expense claims has held that the policyholder's losses were excluded. *See Diesel Barbershop, LLC v. State Farm Lloyds*, No. 5:20-CV-461-DAE, 2020 WL 4724305, at *5, 17 (W.D. Tex. Aug. 13, 2020) (finding "COVID-19 is in fact the reason for the Orders being issued and the underlying cause of Plaintiffs' alleged losses," and under the policy's "plain language," the virus exclusion bars coverage); Mot. Ex. C, Transcript of Decision at 20, *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB-C30 (Ingham Cty., Mich. Cir. Ct. Jul. 1, 2020) (finding the policy "supplies a completely workable, understandable, usable" concept of virus and the virus exclusion bars plaintiff's claims).

The Opposition argues that the Court should not enforce the Virus Exclusion because the Policy "instilled a reasonable expectation in Plaintiff that . . . if its business was forced to shut down, . . . the Policy would provide coverage." Opp. Br. at 15. But an unambiguous exclusion is construed according to its plain meaning. *See Town of Harrison v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 308, 316 (1996). Regardless of Plaintiff's purported subjective expectation about the its insurance coverage, nothing "relieved [it] of its obligation to read the policy, which contained an express exclusion" for losses caused by or resulting from a virus. *Nicholas J. Masterpol, Inc. v. Travelers Ins. Cos.*, 273 A.D.2d 817, 817 (4th Dept. 2000) (adding a policyholder has "presumptive knowledge of the terms of the policy prior to the loss" and enforcing an applicable exclusion notwithstanding plaintiff's subjective expectations).

---

response to a pandemic." Opp. Br. at 14 (emphasis in original). As set forth in the Moving Brief, a loss caused by an action of civil authority issued in response to an excluded peril, *e.g.*, a virus, is plainly excluded based on the explicit application of the Virus Exclusion to the Civil Authority section of the Policy. *See* Mov. Br. at 12; *accord Prime Alliance Grp., Ltd. v. Hartford Fire Ins. Co.*, No. 06 Civ. 22535, 2007 WL 9703576, at *4 (S.D. Fla. Oct. 19, 2007) ("[A] plain language reading of this section provides coverage when a peril—such as a windstorm—causes damage to property and, as a result, access to property is precluded by a civil authority order.").

3

Finally, the Opposition invokes "regulatory estoppel," arguing that the doctrine should bar enforcement of the Virus Exclusion given representations the insurance industry supposedly made to regulators when virus exclusions started being added to standard property insurance policies. Opp. Br. at 17-18. Plaintiff cites no New York case law supporting this argument. This is because New York courts, like most other jurisdictions, have not recognized the doctrine of regulatory estoppel and instead uphold the terms of unambiguous contracts, including insurance policies. *See Emps. Ins. of Wausau v. Duplan Corp.*, No. 94-cv-3143-CSH, 1999 WL 777976, at *14 (S.D.N.Y. Sept. 30, 1999) ("I recognize that the theory . . . has received almost universal disapproval. It has been consistently rejected by federal and state authorities across the country and has never been adopted by any New York court. Indeed, at least two New York courts have flatly rejected the theory.") (internal citations omitted).[3] This court has declined to invoke regulatory estoppel on at least two occasions. *Id.*; *Sher v. Allstate Ins. Co.*, 947 F. Supp. 2d 370, 389 (S.D.N.Y. 2013) ("It is unclear whether New York has adopted the doctrine of regulatory estoppel. The plaintiffs have produced no cases where the doctrine has been pleaded successfully."). Even if it were relevant, nothing was misrepresented to regulators—prior to virus exclusions, viral contamination was not covered under standard property insurance policies because virus cells cannot constitute direct physical loss of or damage to property. The virus exclusion, which emerged in policies following the H1N1 virus pandemic, clarified this proposition. *See* Opp. Br. at 6 n.5; Compl. ¶ 29.

---

[3] One New York Supreme Court case examined the doctrine's application without considering whether it was recognized under New York law, and nonetheless declined to utilize it "[a]bsent the existence of prior regulatory proceedings analogous to the judicial prosecution of an action." *Tozzi v. Long Island R. Co.*, 651 N.Y.S.2d 270, 275 (N.Y. Sup. Ct. 1996).

## II. THE OPPOSITION CONCEDES THAT LOSS OF INCOME AND EXTRA EXPENSE CAUSED BY SOCIAL-DISTANCING ORDERS ARE NOT LOSSES "CAUSED BY" DIRECT PHYSICAL LOSS OF OR DAMAGE TO PROPERTY

For Business Income coverage to apply, Plaintiff must allege a suspension of operations "caused by direct physical loss of or damage to" its property. *See* Mot. Ex. A (the "Policy") at 38. Similarly, for Extra Expense coverage, Plaintiff must allege an expense that Plaintiff would not have incurred "if there had been no direct physical loss or damage" to Plaintiff's property. *Id.* at 39. The Opposition argues that the "direct physical loss of or damage to" requirement was met because Plaintiff's property was contaminated by COVID-19 virus cells. Opp. Br. at 8.

First, that is not the theory advanced in the Complaint, which expressly disavows a claim based on the presence of virus cells, and instead proceeds on the theory that Plaintiff's losses were caused by social-distancing orders issued in response to the COVID-19 virus. *Id.* ¶ 57 ("Plaintiff's daycare centers are unable to operate at full capacity as a direct consequence of the Civil Authority stay-at-home orders [.]"); *see also id.* ¶¶ 35, 73-74. At most, the Complaint alleges that Plaintiff's property is "highly susceptible to contamination and damage." Compl. ¶ 79; *see also id.* ¶ 75. "Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013). The theory alleged in the Complaint fails because social distancing orders are simply not and cannot ever be "direct physical loss of or damage to" property. Indeed, there are now six courts that have addressed this very question in the context of COVID-19 business income and/or extra expense claims and all of them have held accordingly. *See* Mot. Ex. B, Transcript of Decision at 15, *Social Life Magazine, Inc. v. Sentinel Ins. Co. Ltd.*, No. 20-Civ-3311 (VEC) (S.D.N.Y. May 14, 2020) ("New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going . . . this is just not what's covered under these insurance policies."); Mot. Ex. C, Transcript of Decision at 19,

5

*Gavrilides*, No. 20-258-CB-C30 ("The complaint here does not allege any physical loss of or damage to property. The complaint alleges a loss of business due to executive orders shutting down the restaurants . . . for dining in the restaurant due to the Covid-19 threat."); *Rose's 1, LLC v. Erie Ins. Exch.*, No. 2020 CA 002424 B, 2020 WL 458206, at *1 (D.C. Super. Aug. 6, 2020) ("[I]n the context of property insurance, the term 'direct loss' implies some form of direct physical change to the insured property."); *Diesel Barbershop*, 2020 WL 4724305 (finding no "direct physical loss" where the policyholder alleged social distancing orders implemented as a result of the COVID-19); Ex. 1, Report and Recommendation at 20, *Malaube, LLC v. Greenwich Ins. Co.*, No. 1:20-cv-22615-KMW (S.D. Fl. Aug. 26, 2020) ("[T]he loss must arise to actual damage . . . . it is not plausible how two government orders meet that threshold when the restaurant merely suffered economic losses—not anything tangible, actual, or physical"); Ex. 2, Order Granting Defendant's Motion to Dismiss and Denying Plaintiff's Motion to Remand at 6, *10E, LLC v. Travelers Indem. Co. of Conn.*, No. 2:20-cv-04418-SVW-AS (C.D. Cal. Aug. 28, 2020) ("[L]osses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase.").[4]

In *Rose's 1*, restaurants sought a declaratory judgment that their loss of income resulting from Washington, D.C. social distancing orders was covered under their insurance policies. *See Rose's 1*, 2020 WL 458206, at *1. Similar to Plaintiff's policy, the policies insured income losses resulting from "direct physical loss" of property. *Id.* The court decided as a matter of law that the social distancing orders did not constitute direct physical loss because they "did not have any effect on the material or tangible structure of the insured properties." *Id.* at *2. *Rose's 1* cites the

---

[4] Citations to "Ex. __" refer to exhibits to the Supplemental Declaration of Michael J. Garvey, dated August 31, 2020.

6

precedent included here establishing that the "direct physical loss or damage" requirement "unambiguously[] requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage." *Id.* at *4 (quoting *Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014)); *see also Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 7 (1st Dept. 2002) (denying coverage where mandate denied access following a scaffolding collapse because "business interruption coverage is limited to losses involving physical damage to the insured's property").

Second, the new theory advanced in the Opposition, that the virus itself contaminated Plaintiff's daycare centers, would still fail because this Policy contains a Virus Exclusion that excludes losses caused by or resulting from a virus. *See supra* Point I.

Finally, even if this Policy did not include a Virus Exclusion, the presence of virus cells still would not trigger coverage under New York law, which recognizes that "[d]irect physical loss or damage" requires "actual, demonstrable harm of some form to the premises itself" and "mere loss of use" absent physical damage is not sufficient. *Newman Myers*, 17 F. Supp. 3d at 331; *see* Mov. Br. at 6. This is the majority rule in the United States. Indeed, within the last two weeks, the Eleventh Circuit affirmed the trial court's decision in *Mama Jo's Inc. v. Sparta Ins. Co.*, cited in the Moving Brief, holding that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" No. 18-cv-12887, 2020 WL 4782369, at *8 (11th Cir. Aug. 18, 2020); *see also* Ex. 3, Order Granting Demurrer at 1 and Hearing Transcript at 10-11, *The Inns by the Sea v. California Mut. Ins. Co.*, No. 20CV001274 (Ca. Super. Ct. Aug. 6, 2020) (granting demurrer where the policyholder claimed the presence of COVID-19 caused "direct physical loss of or damage to" property). And even if virus cells could constitute a "direct

7

physical" loss, a policyholder would need to plead and ultimately prove that its loss of income was "cause by" the supposed presence of the cells, which Plaintiff has not claimed.

The Opposition relies heavily on *Studio 417, Inc. v. Cincinnati Ins. Co.*, a recent COVID-19 insurance coverage decision from the Western District of Missouri applying Missouri law. There, the relevant policy did *not* include a virus exclusion. The policyholder's complaint "expressly allege[d] physical contamination" to its salons by COVID-19 virus cells and that the policyholder's loss of income arose from that contamination. No. 20-CV-03127-SRB, 2020 WL 4692385, at *4 (W.D. Mo. Aug. 12, 2020). Again, this theory was not alleged in the Complaint, the policy here contains a virus exclusion, and the holding is inconsistent with New York law.

The other cases Plaintiff cites all involve physical alteration of insured premises that rendered the policyholder's premises allegedly uninhabitable or useless. *See, e.g.*, *Hughes v. Potomac Ins. Co. of D.C.*, 199 Cal. App. 2d 239, 249 (Ct. App. 1962) (soil beneath a dwelling slid away and left it overhanging a 30-foot cliff); *W. Fire Ins. Co. v. First Presbyterian Church*, 437 P.2d 52 (Colo. 1968) (property declared uninhabitable due to gasoline accumulation).[5] Here, there is no claim of uninhabitability attributable to virus cells in Plaintiff's daycare centers. To the contrary, Plaintiff concedes that their daycare centers remained open for business. Compl. ¶ 57.

### III. THE OPPOSITION DOES NOT ADDRESS THE COMPLAINT'S FAILURE TO SATISFY THE REQUIREMENTS FOR CIVIL AUTHORITY COVERAGE

---

[5] Plaintiff cites *Schlamm Stone & Dolan, LLP v. Seneca Ins. Co.*, 6 Misc.3d 1037(A), 800 N.Y.S.2d 356 (Sup. Ct. 2005) for the proposition that dust and noxious particles can constitute property damage because they impair the insured ability to use the property. However, the policy in *Schlamm*, unlike here, defined "property damage" to include "loss of use of tangible property which has not been physically injured or destroyed." The insurance policy in *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d 822 (E.D. La. 2010) also explicitly provided coverage for "loss of use." The Policy here includes no such coverage.

8

The Civil Authority claim fails because (1) Plaintiff concedes that the civil authority action was caused by the virus, which is excluded based on the Virus Exclusion; (2) Plaintiff has not identified an action of civil authority taken due to "direct physical loss of or damage to property" at some place other than Plaintiff's premises and (3) social distancing orders did not, by Plaintiff's own admission, prohibit access to Plaintiff's daycare centers.

First, as stated in Point I *supra*, the Opposition repeatedly acknowledges that the social-distancing orders were issued as a result of the COVID-19 virus, an excluded peril. Opp. at 11 ("[T]he civil authority orders were put in place to response to the coronavirus[.]"). Accordingly, the Civil Authority claim is foreclosed by the Virus Exclusion.

Second, the Complaint is clear that the social-distancing orders in New York were put in place to "mitigate the spread of COVID-19." Compl. ¶ 39, *see also id.* ¶ 81. Plaintiff argues that the orders were issued due to supposed physical loss or damage from the COVID-19 virus in the area of Plaintiff's property, but this finds no support in the Complaint or the relevant orders it references.[6] This case stands in direct contrast to *Narricot Indus., Inc. v. Fireman's Fund Ins. Co.*, which Plaintiff cites, where government authorities hand-delivered letters to industrial facilities prohibiting them from operating because of hurricane damage to various utilities near the insured premises. *See* No. CIV.A.01-4679, 2002 WL 31247972, at *4 (E.D. Pa. Sept. 30, 2002).

Finally, the social-distancing orders did not "prohibit[] access" to Plaintiff's daycare centers. Plaintiff concedes as much in the Complaint, alleging that their business was open and

---

[6] For the first time in the Opposition, Plaintiff references a March 17, 2020 Executive Order which it alleges recognizes the COVID-19 virus causes damages to property. Plaintiff did not reference, cite to, or attach this order in its Complaint and it should be disregarded. In any event, the order relates to group riding in cars and is entirely irrelevant. Plaintiff also did not attach the social distancing orders that were in fact referenced in the Complaint, but they make no mention of COVID-19 causing property damage and Plaintiff does not allege otherwise.

9

operational. Compl. ¶ 57. Indeed, Plaintiff's allegations are akin to those in *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, 306 A.D.2d 67, 67 (1st Dept. 2003) where the court denied civil authority coverage because, despite the fact that vehicular and pedestrian traffic was diverted by civil authorities, plaintiff's restaurant was "accessible to the public, plaintiff's employees and its vendors." *See also* Mot. Ex. D, *Borah, Goldstein, Atschuler, Nahins & Goidel, P.C. v. Trumbull Insurance Co.*, 2016 N.Y. Slip Op. 32736 (U), at *28 (N.Y. Cty. Apr. 5, 2016) (finding civil authority coverage did not apply because Plaintiff's access to its property was not specifically prohibited, despite closures in other locations in New York City following Hurricane Sandy).

Plaintiff again relies on *Studio 417*, decided under Missouri law, for the proposition that access to insured property does not need to be entirely prohibited for civil authority coverage to apply. In *Studio 417*, however, social-distancing orders explicitly directed that the policyholders close their non-essential businesses. Here, the social-distancing orders permitted Plaintiff to remain open, but Plaintiff supposedly experienced a drop in business due to the impact of social-distancing orders on their customers. The Opposition also points to a provision in the Policy that defines "suspension of operations" as including a partial slowdown. However, "suspension of operations" appears nowhere in the Civil Authority provision. Indeed, this definition of "suspension of operations" stands in stark contrast to the requirement that a civil authority "prohibits access," which is the unambiguous predicate for Civil Authority coverage. *See Facet Indus., Inc. v. Wright*, 95 A.D.2d 262, 265 (1st Dept. 1983) ("Wherever possible, operation, effect and meaning must be given to every sentence, clause and word of an insurance policy[.]").

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

DATED:   August 31, 2020
         New York, NY

                                                Respectfully submitted,

                                                SIMPSON THACHER & BARTLETT LLP

                                                By:   *Michael J. Garvey*

                                                Bryce L. Friedman
                                                Michael J. Garvey
                                                425 Lexington Avenue
                                                New York, New York 10017
                                                Telephone: (212) 455-2000
                                                Facsimile: (212) 455-2502
                                                Email: mgarvey@stblaw.com
                                                Email: bfriedman@stblaw.com

                                                *Attorneys for Defendant Republic-Franklin Insurance Company*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 31st day of August 2020, a true and correct copy of the foregoing document was served by e-mail to the parties registered to the Court's CM/ECF system.

                                                                  */s/ Michael J. Garvey*
                                                                     Michael J. Garvey